IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| vs. | : |
| | : CRIMINAL NO. 1:CR-16-0050-01 |
| EARL LAFAYETTE HALL, III, | : |
| Defendant | : (Judge Caldwell) |
| | : |
| | : |
| | : |

*M E M O R A N D U M*

I.  *Introduction*

Defendant, Earl Lafayette Hall, III, has been charged with numerous counts of mail fraud, 18 U.S.C. § 1341; money laundering, 18 U.S.C. § 1956(a)(1)(B)(i); and aggravated identity theft. 18 U.S.C. § 981(a)(1)(C). He has filed a motion to suppress statements he made to agents of the United States Department of Labor, asserting they were obtained in violation of his *Miranda* rights, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that, in any event, the statements were involuntary.

In moving to suppress, Defendant does not request a hearing. He specifically bases his motion on the audio disc of the seven-minute interrogation that led to his statements. He argues the audio disc will reveal the violations and that the court should grant his motion after a review of the disc. We will therefore hold no hearing on the motion. *See United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010)(an evidentiary

hearing is required on a motion to suppress if, in part, "there are disputed issues of material fact").[1]

II.  *Discussion*

Before conducting a custodial interrogation, *Miranda* requires that the police inform a suspect that he has the right (1) to remain silent, (2) to have an attorney present during the interrogation, and (3) to "cease the interrogation if at any point the suspect indicates that he wishes to remain silent or that he wants an attorney." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989). The suspect must also be informed that the police intend to use his statements to secure a conviction. *Id.*

*Miranda* allows a suspect to waive these rights. The waiver "must be the product of 'a deliberate choice to relinquish the protection those rights afford.'" *United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012)(quoting *Berghuis v. Thompkins,* 560 U.S. 370, 385, 130 S.Ct. 2250, 2262, 176 L.Ed.2d 1098 (2010)). "A court will inquire first, whether 'the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice,' and second, whether the waiver was made 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). "Factors relevant to determining whether a statement is voluntary include: whether the police engaged in coercive activity; the

---

[1] Along with the audio disc (Doc. 28), Defendant submitted a transcript of the interrogation. (Doc. 26-1).

length, location, and continuity of the interrogation; the age, education, physical and mental condition of the defendant; and whether *Miranda* rights were given.  *United States v. Kellam*, No. 14-CR-323, 2015 WL 6560637, at *7 (M.D. Pa. Oct. 29, 2015)(citing *Withrow v. Williams*, 507 U.S. 680, 693, 113 S.Ct. 1745, 1754, 123 L.Ed.2d 407 (1993)).

Invocation of the right to remain silent or the right to counsel must be made unambiguously.  See *Berghuis, supra,* 560 U.S. at 370, 381-82, 130 S.Ct. at 2260-61; *United States v. Washington*, No. 11-CR-0042, 2012 WL 4051194, at *2 (W.D. Pa. Sept. 22, 2012).

Defendant does not dispute that the agents read him his *Miranda* rights. Additionally, he said he understood his rights when asked by one of the agents, (Doc. 26-1, transcript, ECF p. 1), and then volunteered a second time that he understood his rights.  (*Id.*, ECF p. 3).  Defendant argues that the agents violated his right to remain silent when they continued to question him even though he had made "an unequivocal statement that he did not wish to speak to the agents."  (Doc. 27, Def.'s Br. at p. 4). Defendant relies on the following interaction after he was informed of his rights as set forth in the transcript:

> [Agent]: Ok, um do you wish to speak to us and answer some of our questions?
>
> [Defendant]: No, I do not, I don't even know what's going on so . . .

(Doc. 26-1, ECF p. 1). Defendant adds that the communications immediately following indicate that he "only wanted to hear what [the agents] had to say." (Doc. 27, Def.'s Br. at P. 4).

We reject the argument that Defendant invoked his right to remain silent. A fuller reading of the transcript shows (supported by the audio disc) that Defendant did not stop speaking after saying "No, I do not" but instead spoke continuously, expressing his puzzlement over why he and the agents were there, and then eventually agreeing to answer the agents' questions.

> We cite the material portions of the transcript:
>
> [Agent]: Ok, um do you wish to speak to us and answer some of our questions?
>
> [Defendant]: No, I do not, I don't even know what's going on so . . .
>
> [Agent]: Ok, so . . .
>
> [Defendant]: I'm just sitting here, you reading my rights and all of this stuff but I don't even know why I'm here.
>
> [Agent]: Ok, I would like an opportun-
>
> [Defendant]: I haven't even never stepped foot in Pennsylvania. So why am I, why are you, why are you even here?
>
> [Agent]: . . . Um but again I would like to interview you and all I'm asking for you is for your permission to interview you. If you don't wanna talk to me and you would prefer to consult with a lawyer, that is your right.
>
> [Agent]: No I'm not (inaudible) I don't know what's going on here.

-4-

>  . . . .
>
> [Second agent]: Well, here's what we can do.  We'll start asking you a few questions which will give you a better idea of why you're here.  And if at any point you wanna stop, just tell us to stop, and we'll stop, you can consult with an attorney.
>
> [Defendant]: Ok.

(*Id.*, ECF pp. 1-2)

> [Defendant]: And for the record I am, I'm doing this under duress.

(*Id.*, ECF p. 3)

> [Agent]: Ok.  Are you willing to talk to us then?  Without an attorney present?
>
> [Defendant]: For the time being.
>
> [Agent]: Ok.
>
> [Defendant]: to understand what I'm going through, what's going on.

(*Id.* ECF p. 4).

This is not an unambiguous invocation of Defendant's right to remain silent. Indeed, it is an agreement to speak with the agents and without an attorney present. Thus, Defendant's remarks are not inadmissible on the basis that he invoked his right to remain silent. We add that it is immaterial that Defendant talked to the agents because he wanted to hear what they had to say. *Cf. Whiteford*, *supra*, 678 F.3d at 362 (ruling that *Miranda* waiver was not invalid because of the psychological pressure the defendant felt from the agents' failure to inform him of the charges against him and observing that

the court was unaware of any authority "that a defendant must know of the charges against him to validate a *Miranda* waiver").

Even if a defendant does not invoke his *Miranda* rights, his statements are still inadmissible unless the government proves that he voluntarily and knowingly waived his rights. *Berghuis*, *supra*, 560 U.S. at 382, 130 S.Ct. at 2260. Defendant asserts his statements were involuntary because he "told the officers that he did not want to talk to them, he requested counsel at several points, and even told the officers that he was talking to them under 'duress.'" (Doc. 27, Def.'s Br. at p. 6). As part of this argument, Defendant requests that we listen to the audio disc.

We disagree with Defendant that his statements were involuntary, and we believe that the government has met any burden it has in regard to proving that Defendant's statements were voluntary. Our review of the transcript and audio disc convinces us that Defendant agreed to talk with the agents and never unequivocally invoked his right to counsel. He did say he was acting under "duress," but duress was not apparent during the interrogation, which lasted only seven minutes, and ended when Defendant stated he "need[ed] to speak to an attorney . . . ." (Doc. 26-1. ECF p. 8).

Defendant also argues that the agents violated his right to have an attorney present during questioning when they continued to interrogate him after he invoked his right to an attorney. Defendant bases this argument on his statement while he was being questioned that "I'm gonna speak to a lawyer. Can I, can I have, what's going on here." (Doc. 26-1, ECF p. 6).

As shown above, Defendant waived his right to remain silent and to an attorney and began speaking with the agents. In these circumstances, a belated request for counsel must be unambiguous. *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994). If the suspect's reference to an attorney is ambiguous, there is no need to end the questioning. *Id.,* 114 S.Ct. at 2355. Here, Defendant's reference to a lawyer, that "I'm gonna speak to a lawyer," was ambiguous as it indicated a future intent to speak to a lawyer, *see State v. Hatten*, 927 N.E.2d 632, 645 (Ohio Ct. App. 2010); *Juarez v. Commonwealth*, 2008 WL 2167887, at *4 (Ky. 2008)(nonprecedential), not a request for the immediate assistance of a lawyer.

We will issue an appropriate order.

/s/William W. Caldwell  
William W. Caldwell  
United States District Judge

July 12, 2016