IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | Crim. No. 1:16-cr-050-1 |
|---|---|---|
| | . | |
| | . | |
| **v.** | : | |
| | . | |
| | . | |
| **EARL LAFAYETTE HALL, III** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Presently before the court is Defendant Earl Lafayette Hall, III's counseled motion to vacate (Doc. 206)[1] and *pro se* Rule 33 motion for new trial (Doc. 204), following his trial and guilty jury verdict on twelve counts of mail fraud, ten counts of money laundering, four counts of aggravated identity theft, one count of conspiracy to commit mail fraud, and one count of conspiracy to commit money laundering. For the reasons stated herein, both motions will be denied.

## I.      Relevant Facts and Procedural History

On November 9, 2016, Hall was charged in a thirty-one count Second Superseding Indictment made up of: twelve counts of mail fraud in violation of 18 U.S.C. § 1341; ten counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); seven counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1); one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349; and one count of conspiracy to commit money

---

[1] While Hall titles his motion a "motion to vacate," and neither party addresses the appropriate standard for evaluating the motion, the court is interpreting it as a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29.

laundering in violation of 18 U.S.C. § 1956(h). (Doc. 63.) Defendants were accused of perpetrating a scheme between January 2013 and June 2015 that involved submitting counterfeit United States military discharge certificates bearing the names, dates of birth, and social security numbers of eleven individuals to agencies in various states in order to fraudulently collect unemployment compensation benefits for ex-service members.

Trial commenced on March 6, 2017. During trial, Hall moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on all counts except Count 28. The court granted the motion with respect to Counts 25 and 27 for aggravated identity theft, but denied the motion as to all other counts. On March 10, 2017, the jury found Hall guilty of mail fraud in Counts 1 through 12; money laundering in Counts 13 through 22; aggravated identity theft as to Brandon Abbott, Bryce Good, Shawnta Williams, and Charles Campbell in Counts 23, 24, 26, and 28; Count 30 for conspiracy to commit mail fraud; and Count 31 for conspiracy to commit money laundering. (Doc. 131.) Hall was acquitted of Count 29.

At trial, the Government introduced unemployment compensation benefits for ex-service members ("UCX") claims submitted to the Pennsylvania Department of Labor and Industry ("PA L&I") under the identities of Brandon Abbott, Bryce Good, Shawnta Williams, and Charles Campbell, which included

military discharge certificates titled "DD Form 214." (Gov. Exs. 4, 5, 7, & 9.) Testimony at trial established that an individual can apply for UCX benefits by going into a PA L&I office, via the internet, or by calling a call center. (Trial Tr. Mar. 6, 2017, at pp. 157-58.) The DD Form 214 can then be provided to PA L&I by fax, email, or mail. (*Id.* at 154, 159.) The individual receiving benefits then submits biweekly claims through the internet, by calling the Telephone Automated System, or by speaking to a representative over the phone. (*Id.* at 160.)

Brandan Abbott verified his date of birth and social security number on the UCX claims, but noted that his first name was misspelled and middle initial was incorrect. (Trial Tr. Mar. 7, 2017, at pp. 42-45.) Bryce Good and Charles Campbell verified their dates of birth and social security numbers on the UCX claims, but also testified that their middle initials were incorrect. (*Id.* at 55, 58-59, 66-67.) As to Shawnta Williams, the Government introduced a certified California Department of Motor Vehicles driver's license in the name of Shawnta Denise Williams with a date of birth of April 16, 1986, which corresponded with the UCX claims submitted in that name. (Gov. Exs. 7 & 53; Trial Tr. Mar. 8, 2017, at pp. 70-71.)

Desiree Ryman, Unemployment Specialist II for PA L&I, testified that changes made to forms for Brandon Abbott were completed via the internet and payments were first received by debit card, but eventually changed to direct

3

deposit. (Trial Tr. Mar. 6, 2017, at pp. 163, 169-73.) Bryce Good's application was also submitted via the internet, with changes made over the phone, and payments received by direct deposit. (*Id.* at 174, 180-81.) Similarly, Shawnta Williams' claim was submitted via the internet, as well as faxed several days later, with payments received by debit card, direct deposit, and later paper checks. (*Id.* at 186-87.) Lastly, Charles Campbell's claim was paid by check and mailed. (*Id.* at 192.)

Special Agent Syreeta Scott ("SA Scott") of the United States Department of Labor, Office of Inspector General testified that she interviewed Blunt on March 3, 2016, at which time Blunt admitted to posing as Shawnta Williams during the June 25, 2014 call. (Trial Tr. Mar. 8, 2017, at p. 112.) Further, Blunt stipulated that she made the June 25, 2014 call. (Gov. Ex. 100.) During direct-examination, Blunt testified that Hall communicated to her that Shawnta Williams was not a real person and that her family would be physically harmed if she did not make the phone call posing as Shawnta Williams. (Trial Tr. Mar. 9, 2017, at pp. 57-59.) However, on cross-examination, Blunt admitted she told SA Scott during her interview on March 3, 2016, that Hall informed her that Shawnta Williams was his cousin. (*Id.* at 76-77.)

**II.**  **Counseled Motion to Vacate Counts 23, 24, 26 and 28**

    **A.**  **Legal Standard**

When assessing a motion for judgment of acquittal pursuant to Rule 290, the district court must view the evidence in the light most favorable to the prosecution to determine "whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006) (citing *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)). The standard for granting a motion for judgment of acquittal based on insufficient evidence to sustain a conviction is quite stringent. *United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008). The defendant bears a heavy burden of demonstrating that relief is appropriate, and the granting of relief under Rule 29 is "confined to cases where the prosecution's failure is clear." *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984) (citing *Burks v. United States*, 437 U.S. 1, 17 (1978)). Indeed, where the challenge to a jury verdict is based on the sufficiency of the evidence produced at trial, the court "must be ever vigilant . . . not to usurp the role of the jury" by weighing the evidence or making credibility determinations, or by substituting its judgment for that of the jury. *Mercado*, 610 F.3d at 845; *see also United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). Relief is only appropriate "if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a

reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (quoting *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983)). Stated another way, the court must determine whether a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all of the elements of the offenses.

### B. <u>Discussion</u>

Hall sets forth three arguments in his counseled motion to vacate: (1) the conviction on Counts 23 and 24 should be set aside because the Government did not prove that Hall used, or caused to be used, the mails in furtherance of aggravated identity theft; (2) the Government did not prove Shawnta Williams was a real person so the guilty verdict for Count 26 should be vacated; and (3) the convictions on all aggravated identity theft counts should be set aside because the Government presented no evidence that Hall knew the means of identification belonged to real people. The court will address each argument in turn.

### 1. Proof of mailings

Hall first argues that the Government did not prove that he knowingly transferred, possessed, or used, without lawful authority, a means of identification of Brandon Abbott and Bryce Good during, or in relation to, mail fraud. (Doc. 207, p. 6.) Because the Government did not present evidence that Hall used the mails or caused the mails to be used for Brandon Abbott or Bryce Good, Hall contends

6

there is no evidence to support the aggravated identity theft convictions for these individuals. (*Id.* at 6-7.) Specifically, he avers that Ms. Ryman's testimony supports this claim because submissions and changes made to Brandon Abbott and Bryce Good's claims were made via the internet, or by telephone, and payment was received by debit card or direct deposit, none of which involve the mail. (*Id.*)

The Government asserts that the mail fraud alleged in the Second Superseding Indictment encompassed the submission of false UCX claims to Pennsylvania, Hawaii, and Utah under the identities of eleven individuals between January 2013 and June 2015. (Doc. 216, p. 3 of 14.) The Indictment alleged one master scheme, rather than separate schemes for each UCX claim, with the submission of multiple false UCX claims under multiple identities. Although there were twelve mailings set forth in furtherance of the scheme to defraud, the Government chose to charge mailings of UCX benefit checks for only one of the claimants, Charles Campbell. The Government argues that it did not have to prove a mailing was made in connection with each identity in order to convict Hall of mail fraud or aggravated identity theft.

The crime of aggravated identity theft provides: "Whoever, during and *in relation to any felony violation enumerated in subsection (c)*, knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced

to a term of imprisonment for 2 years." 18 U.S.C. § 1028A(a)(1) (emphasis added).

One of the "felony violation[s] enumerated in subsection (c)" is mail fraud. *Id.*

§ 1028A(c)(5). In this matter, the aggravated identity theft counts for Brandon

Abbott and Bryce Good allege that Hall knowingly possessed, transferred and used

their means of identification "during and in relation to a felony violation; to wit,

Mail Fraud." (Doc. 63, pp. 11-12.) The court agrees with the Government in that it

did not need to prove a mailing was made in connection with each identity in order

to convict Hall of mail fraud or aggravated identity theft. The jury was provided

with sufficient evidence to find Hall guilty of the master scheme to defraud, and

did so by finding him guilty of all twelve counts of mail fraud. Thus, the jury had

adequate evidence to support its guilty verdict on Counts 23 and 24 for aggravated

identity theft as to Brandon Abbott and Bryce Good. Accordingly, the court will

not vacate Hall's conviction on this basis.

### 2. Evidence that Shawnta Williams is a real person

Next, Hall argues that because Shawnta Williams did not testify, the

Government failed to prove beyond a reasonable doubt that Shawnta Williams is a

real person, thus, Count 26 should be vacated. (Doc. 207, p. 7-8.) The Government

asserts that there is no support for the mandatory court appearance requirement set

forth by Hall, and that the certified California Department of Motor Vehicles

driver's license was sufficient to prove Shawnta Williams is a real person. (Doc. 216, p. 4-5 of 14.)

The crime of aggravated identity theft requires the Government to show that Hall knew that the means of identification at issue belonged to a real person. 18 U.S.C. § 1028A(a)(1); *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). The Government introduced a California Department of Motor Vehicles driver's license in the name of Shawnta Denise Williams with a date of birth of April 16, 1986, which corresponded with the UCX claim submitted in that name. (Gov. Exs. 7 & 53; Trial Tr. Mar. 8, 2017, at pp. 70-71.) The license was sealed and certified as being a true copy of an official record kept by the California Department of Motor Vehicles. (Gov. Ex. 53; Trial Tr. Mar. 8, 2017, at pp. 70-71.)

At trial, the court admitted Shawnta Williams' driver's license under Federal Rules of Evidence 902(1) and (4). Federal Rule of Evidence 902(1) provides that domestic public documents that are sealed and signed are self-authenticating. Fed. R. Evid. 902(1). Further, the court can accept certified copies of public records as self-authenticating. Fed. R. Evid. 902(4). Thus, in accordance with Federal Rule of Evidence 1005, the jury was entitled to rely upon the content of the driver's license to prove that there was a real person by the name of Shawnta Williams with a date of birth of April 16, 1986. *See* Fed. R. Evid. 1005. Further, courts have recognized that it is common knowledge that government agencies scrutinize personal

identifying information to ensure they belong to a real person when issuing documents such as driver's licenses. *See United States v. Gomez-Castro*, 605 F.3d 1245 (11th Cir. 2010); *United States v. Holmes*, 595 F.3d 1255, 1258 (11th Cir. 2010).

Accordingly, viewing the evidence in the light most favorable to the Government, the court finds that the jury was provided with sufficient reliable evidence in the form of a certified driver's license, which was properly admitted into evidence, to have found that Shawnta Williams was a real person. Thus, the court will not disturb the conviction on Count 26.

### 3. Evidence that Hall knew the means of identification belonged to real people

For his last counseled argument, Hall asserts that the Government presented no evidence to prove beyond a reasonable doubt that Hall knew Brandon Abbott, Bryce Good, Shawnta Williams, or Charles Campbell were real people as required by *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). (Doc. 207, pp. 8-9.) Hall acknowledges that there are cases suggesting that repeated successful use of a victim's identity in an application subject to scrutiny is sufficient to permit the jury to find that a defendant knows that victim is a real person. (*Id.* at 8.) However, Hall argues that there is no evidence that the UCX applications or DD Form 214's were subject to any immediate scrutiny. (*Id.*)

The Government agrees with Hall in that the Supreme Court held that the government must prove the defendant "knew the means of identification at issue belonged to another person." (Doc. 216, p. 8 of 14 (quoting *Flores-Figueroa*, 556 U.S. at 657).) However, the Government sets forth several arguments in opposition to Hall's contention that it did not meet this requirement. (*Id.*) First, during the interview with SA Scott, Blunt admitted to posing as Shawnta Williams during the June 25, 2014 phone call to PA L&I. (*Id.*) Blunt testified that Hall told her at one point that Shawnta Williams was his cousin, and at another time, that she was not a real person. (*Id.* at 8-9 of 14.) The Government asserts that Hall's statement that Shawnta Williams was his cousin was a statement in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2)(E) and, therefore, was properly admitted as substantive evidence that the jury was entitled to accept or reject. (*Id.*)

Next, the Government argues that the jury was entitled to find that Hall had knowledge that the identification belonged to real people from circumstantial evidence presented at trial. (*Id.* at 9-12 of 14.) In *United States v. Doe*, 842 F.3d 1117 (9th Cir. 2016), the Ninth Circuit affirmed the defendant's aggravated identity theft conviction holding that "the defendant's repetitive, successful driver's license filings could serve as circumstantial evidence of the defendant's knowledge that the victim was, in fact, a real person." (*Id.* at 9 of 14 (citing *United States v. Doe*, 842 F.3d 1117 (9th Cir. 2016)). The Government offers that the

same type of circumstantial proof was presented in this case. (*Id.* at 10-12 of 14.)

Specifically, the counterfeit DD form 214's contained common errors and entries

which indicated a common source. (*Id.* at 10 of 14.) The Government presented

evidence that showed Hall submitted six successful UCX claims in two states

under the identities of six individuals between January 2013 and July 2014.[2] (*Id.*)

Brandan Abbott, Bryce Good, and Charles Campbell appeared and testified in

court that their names, dates of birth, and social security numbers were used to file

the UCX claims at issue.[3] (*Id.* at 11 of 14.) Lastly, the Government argues that the

fact that Hall stole critical personal identifiers for each person – name, date of

birth, and social security number – serves as powerful circumstantial evidence of

his knowledge that the individuals were real people. (*Id.*) Hall had to know that the

combination of personal identifiers would work together in order to have the UCX

claims processed, and Hall had to ensure that each fictitious claimant was still

living. (*Id.*) Without this information, the UCX claims would have been rejected.

(*Id.* at 12 of 14.)

The court finds that the Government provided sufficient evidence to prove

that Hall had knowledge that the identities used to submit UCX claims belonged to

---

[2] The two additional identities were those of Sam Adams, whose claim was submitted in Hawaii, and Shamarkus Morelan, whose claim was submitted to PA L&I. (*Id.*)

[3] It should be noted that Brandan Abbott testified that his first name was misspelled and his middle initial incorrect in the UCX claims. (Trial Tr. Mar. 7, 2017, at pp. 42-45.) Bryce Good and Charles Campbell also testified that their middle initials were incorrect on the UCX claims (*Id.* at 55, 58-59, 66-67.)

real people. In weighing the evidence, the jury was entitled to accept Blunt's testimony that Shawnta Williams was Hall's cousin. Furthermore, the Government presented enough circumstantial evidence that a rational jury could find that the repetitive use of the names, dates of birth, and social security numbers established Hall's knowledge that Brandon Abbott, Bryce Good, Shawnta Williams, and Charles Campbell were real people. *See, e.g.*, *United States v. Valerio*, 676 F.3d 237, 244-45 (1st Cir. 2012) ("'[W]illingness to subject [a] social security number repeatedly to government scrutiny' is evidence that allows a reasonable jury to find that a defendant knew that a stolen identity belonged to a real person."); *United States v. Gomez-Castro*, 605 F.3d 1245, 1249 (11th Cir. 2010) (holding that "repeatedly and successfully test[ing] the authenticity of the birth certificate and social security card" to obtain a driver's license, benefits card, and passport was sufficient to prove that the identity belonged to a real person); *United States v. Foster*, 740 F.3d 1202, 1207 (8th Cir. 2014) ("[R]epeated subjection of [the victim's] identity to a lender's scrutiny provides strong circumstantial evidence that the [defendant] knew the identity was real."). Accordingly, the court will deny Hall's motion to vacate on this ground.

## III. *Pro Se* Rule 33 Motion for New Trial

### A. Legal Standard

Federal Rule of Criminal Procedure 33 provides that "the court may vacate

any judgment and grant a new trial if the interest of justice so requires." Fed. R.

Crim. P. 33(a). A district court "can order a new trial on the ground that the jury's

verdict is contrary to the weight of the evidence only if it 'believes that there is a

serious danger that a miscarriage of justice has occurred–that is, that an innocent

person has been convicted.'" *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir.

2002) (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)).

A new trial should only be granted sparingly and in exceptional situations.

*United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008); *United States v.*

*Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). Exceptional situations include those in

which trial errors, "either individually or in combination, 'so infected the jury's

deliberations that they had a substantial influence on the outcome of the trial.'"

*United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993); *United States v.*

*Amirnazmi*, 648 F. Supp. 2d 718, 719-20 (E.D. Pa. 2009).

A court may grant a new trial under Rule 33 on the basis of newly

discovered evidence if all of the following requirements are met:

> (a) the evidence must be in fact, newly discovered, i.e.,
> discovered since the trial; (b) facts must be alleged from
> which the court may infer diligence on the part of the
> movant; (c) the evidence relied on, must not be merely

cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006) (quoting *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976)). Defendant bears a "heavy burden" of proving these requirements. *Id.* (citing *United States v. Saada*, 212 F.3d 210, 216 (3d Cir. 2000)).

## B.   <u>Discussion</u>

In his *pro se* motion, Hall argues that the Government failed to produce several pieces of evidence in violation of *Brady v. Maryland*, 373 U.S. (1963). (Doc. 205.) In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The prosecution's obligation to disclose evidence exists even in the absence of a specific defense request if the evidence is of obvious substantial value to the defense. *United States v. Agurs*, 427 U.S. 97, 110 (1976).

### 1. Edgar Leon Emails

Most of the alleged *Brady* violations stem from a series of emails between Hall's former probation officer, Edgar Leon ("PO Leon"), and United States Department of Labor, Office of Inspector General, Special Agent Joel A. Parisi

("SA Parisi"). Hall argues that PO Leon "changed his story" over time as evidenced by these emails and that Hall did not receive these emails from his attorney until after trial concluded. (Doc. 205, pp. 4-8.) According to Hall, the Government's failure to disclose prejudiced him and, had this information been disclosed to Hall and presented at trial, this "newly discovered evidence would probably produce an acquittal." (Doc. 205, pp. 7-8.)

In this series of emails, PO Leon eventually identified Hall's voice on recorded telephone conversations between UCX claimant Samuel Adams and the Hawaii Department of Labor and Industrial Relations, Charles Campbell and PA L&I, and Shamarkus Morelan and PA L&I. (Doc. 204-2; Doc. 204-3, p. 5) At the outset, PO Leon was not completely certain that it was Hall's voice on the recordings. (Doc. 204-2.) However, after listening to the recordings with headphones, PO Leon was certain that Hall was the male voice in all but one of fifteen recordings. (Trial Tr. Mar. 8, 2017, at pp. 51-53.) His opinions were set forth in an email to SA Parisi dated June 21, 2016, which was presented at trial. (*Id.*) Throughout the emails and during his testimony, PO Leon never opined that the male voice in the telephone recordings was not Hall's voice. Rather, in his earlier emails and during his testimony with regards to the one recording he could not identify, PO Leon stated that he could not confirm this was Hall. (*Id.*) Because

of this distinction, the court finds that there are no *Brady* violations regarding the emails between PO Leon and SA Parisi.

Furthermore, regardless of the content of these emails, the Government properly disclosed PO Leon's emails to Hall's counsel, Lori Ulrich, Esquire, as *Jencks* statements on March 2, 2017, four days prior to trial. (Doc. 214, p. 3-4 of 10; Doc. 214-1 p. 2 of 4.) Attorney Ulrich cross-examined PO Leon at trial using several of the emails in question. (Trial Tr. Mar. 8, 2017, at pp. 59-63.)

Hall has presented no newly discovered evidence that would even begin to fulfill the requirements for a new trial. The court finds Hall's claim that he was not aware of these emails until after trial disingenuous, especially because Attorney Ulrich utilized at least two of the emails at trial. Lastly, even if this evidence was newly discovered, the court finds it extremely unlikely to produce an acquittal for Hall.

### 2. Shawnta Williams Telephone Recording

Hall also alleges a *Brady* violation regarding the recorded telephone call between UCX claimant Shawnta Williams and PA L&I on June 25, 2014. (Doc. 205, pp. 12-19.) In addition to being prejudiced by this recording, Hall argues he never received any "audio enhance recordings," or any records pertaining to "audio enhancement or chain of custody records," and that the call was "altered or tampered with." (*Id.* at 13-14.) In an email to SA Parisi on September 19, 2014, PO

17

Leon states: "That guy in the background sounds like Earl Hall. Can you take this to the lab and isolate the vocal tracks for just the male in the background?" (Doc. 204-2, p. 3.) SA Parisi sent PO Leon a clarified version of the call to which PO Leon stated he was "90% sure" it was Hall's voice in the background. (*Id.* at 2.)

Prior to trial, the Government provided the September 19, 2014 email chain to the defense as a part of its *Jencks* disclosures. Additionally, the Government provided the original version of the recording to the defense and, at trial, the Government played that original recording to the jury. (Doc. 214, p. 5 of 10.) The Government presented Shawn Price, an employee of PA L&I, at trial to authenticate the Shawnta Williams recording and the other recorded telephone calls. (Trial Tr. Mar. 7, 2017, at pp. 176-178.) The recordings identified by Mr. Price were the same recordings that were played to the jury and identified by PO Leon at trial. (Gov. Ex. 69; Trial Tr. Mar. 8, 2017, at pp. 53, 58.) Additionally, Blunt admitted that she placed the June 25, 2014 call posing as Shawnta Williams, and Hall stood next to her and told her what to say to the PA L&I representative. (Trial Tr. Mar. 9, 2017, at pp. 56-60.) She further confirmed that it was Hall's voice in the background of the call. (*Id.*)

Once again, Hall has not provided any evidence to support a *Brady* violation, nor any reason for this court to grant a new trial based on the Shawnta Williams telephone call or any other telephone recordings for that matter.

18

### 3. Probation Officer Cristina Figueroa

Lastly, Hall alleges that his former probation officer, Cristina Figueroa ("PO Figueroa") provided exculpatory statements that were not given to Hall in violation of *Brady*. (Doc. 205, pp. 8-11.) He claims that PO Figueroa was not called to the stand by the Government because she would have testified that it was not Hall' voice on the recorded telephone calls. (*Id.*)

SA Parisi contacted PO Figueroa on July 21, 2014, provided two recorded telephone calls from PA L&I, and requested that she listen to them to determine whether she could identify Hall or Blunt. (Doc. 214-3, p. 3 of 4.) He also asked that she have PO Leon and probation officer Jessica Cook ("PO Cook"), who supervised Blunt, listen to the recordings. (*Id.*) PO Figueroa replied: "USPO Ed Leon stated that he is 100% sure that the male voice is Earl Hall. I listened to the recording and could not make the same conclusion as I have been supervising for less time. I am waiting to hear from USPO Jessica Cook. Feel free to contact them directly for further information." (*Id.* at 2 of 4.) Shortly after her reply, PO Figueroa emailed SA Parisi again to relay that PO Cook recognized the female voice as Blunt. (Doc. 214-4, p. 2 of 2.)

The fact that PO Figueroa could not come to the same conclusion as PO Leon and Cook is not evidence that PO Figueroa's testimony would exonerate Hall. She did not say that the male voice was not Hall, but simply that she could

19

not come to the same conclusion as PO Leon. The Government did not violate *Brady* by not disclosing these emails. Moreover, even if the court considered PO Figueroa's emails newly discovered evidence, Hall has not met the heavy burden of proving that this evidence would probably produce an acquittal.

For all of these reasons, Hall's *pro se* Rule 33 motion will be denied.

## IV. <u>Conclusion</u>

For the reasons stated herein, the court will deny Hall's counseled motion to vacate (Doc. 206) and his *pro se* Rule 33 motion for new trial (Doc. 204). An appropriate order will issue.

s/Sylvia Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: December 21, 2017